at all? Okay, Mr. Perry, whenever you're ready. Good morning, every police in court. There are some points I want to bring forth on the papers that we just submitted. If you don't have any questions, though, I would like to, at least immediate questions, I would like to politely remind the court that there's two parts to this case. There's the actual infraction where, the constitutional infraction where Kelly Glover is arrested, and then there is the cover-up. The cover-up is what I'm personally far more concerned with today. But it occurs to me that you may have some questions about the actual arrest. If you do, please feel free. Well, I guess I would say, I don't have a question specifically about that, but what you're characterizing as a cover-up, the question is, how does that relate to the claims that you are, that Ms. Glover is making here? So if you want to address that and tie it to that. I'd be glad to, ma'am. I'm really glad you asked the question. On page 11 of my opponent's brief, we are informed that defendant Albanese had to leave the Sheriff's Department, having had numerous run-ins with his own people in terms of his discipline. I was not able to find that out until that moment. I literally learned this three days ago. There is no documents, there are no papers, there is nothing that says that he was ever... But how does that relate to his actions in this case? Because, Judge, we deposed Ashley Smith, another police officer from a different department. And Ashley Smith tells us that he bragged to her. He bragged to her that nothing was going to happen because there was a promise. The promise being that he would resign and all of this would go away. And everything that went away is every document that I'm screaming about. Your Honor, I have been a defense attorney in the state of New York for 35 years. There is no such thing as an arrest without an arrest report. It can't happen. Never has it happened to me. Ever. Not once. And, if that's not enough, Judge, there was not... Oh, we know that there was not. The reason we know this is because she was fingerprinted and there has to be arrest reports going to the fingerprint desk. How does that relate, though, to the idea of these claims of false arrest or false imprisonment? I guess the issue I see is if, in fact, there was probable cause for her arrest, these other actions that occurred afterwards that may or may not have been improper, I don't see how that sort of gets you over the hurdle of if there was, in fact, probable cause for her arrest, then you don't have a claim for that. Judge, the only thing the lady did, the only thing she did was she passed two 20s. That's it. Actually, at the time... I just didn't hear the word. The only thing that happened. I'm sorry. I just didn't hear the word. Say that sentence. Oh, I'm sorry, sir. The only thing that happened. The only thing that physically happened was the lady passed, we are told, we do not know this for a fact, we are told that she passed two counterfeit 20s. Now, at the time, she actually used three 20s. Now, Your Honor, we're supposed to look at this. That's not sufficient for probable cause? No, ma'am, that is not. I'm not saying it's enough for conviction and obviously there are other factors, but being seen passing counterfeit bills is not enough? No, ma'am, it is not. The statute itself and the case law says you have to have a knowledge and an intent to defraud. Now, Ms. Glover just went to an ATM machine, withdrew the bills and probably got them there, but we don't know that for a fact. But the bottom line is that there was absolutely no evidence whatsoever anywhere here that she had any knowledge that these things were fraudulent, counterfeit, whatever. Instead, what happens? She passes two bills. If we, for argument's sake, if we say she passed two counterfeit 20s, what else did she do? She used her shopper's club card at the time because she gets a discount off of groceries. Now, forgive me, but as a defense attorney with three and a half decades of experience, this is the first criminal defendant I have ever seen that gave her ID to the person during the course of the crime. The next thing that happens, Ms. Glover bundles up her stuff and leaves and goes home. Officer Albany shows up on her front door a day or so later. She invites him in because it's raining. When she finds out that he's investigating a crime, she is terrified because there has been some people in the neighborhood that have been impersonating police officers and making burglaries and that kind of thing, and she asks him to leave, and he will not leave. Now, he's not entitled to be there, but he is not. It's called a patent violation. He's not allowed to be there, but he's there anyway, and he will not leave. Then we are told that Ms. Glover, although she is panicked, will not say a thing to him, will not say anything to absolve herself, hasn't said anything about the ATM machine, hasn't made a mention of her innocence, and allows herself to be arrested, which I find absolutely, categorically wrong. She was deposed, and she said, I told him I went to the ATM machine. I told him I have a receipt. He wouldn't look at the receipts. Now, Officer Albany has a long history of problems at the police department, which culminated in his firing. The fact of the matter is, is Officer Albany is a bully and a very bad police officer. Was he a rookie at the time? He had about six months in. Now, just incidentally, ma'am, I'm glad you asked that, too. There are things called observation reports. Every single day, as someone, because he used, there's a note, every single day there's supposed to be a report filed on his activities that day, except in this case, because they disappeared. Ma'am, this is one long case where everything disappears, everything gets shredded, everything goes away, and then Officer Albany is allowed to resign. Now, the reason, and I was disparaged in my opponent's papers over this, the reason it's important to know what happened when he attacked that juvenile. He was not investigating a crime at the time. It was a medical problem. The kid was psychotic. He was suicidal. And yes, he was yelling and he was screaming, he was thrashing around. He was also in four-point restraints and tied to a gurney. He couldn't move. And Officer Albany is looking upon himself to get on this kid's chest and choke him out. And it took two other police officers and two EMTs to get him off of this thing. It's an assault second if I've ever seen one. But nothing happens to Officer Albany because of what Officer Ashley Smith said. If you get into this, we find out that a lot of people that don't want to get caught have covered up for Officer Albany. The cover-up is worse than the crime itself. If we get into this... The statements that you say Officer Smith made, are they in the record someplace? I'm sorry, ma'am? You've cited to... You've described statements that Officer Smith made about Officer Albany. Are they in the record? And could you tell me where to find them? On page 11 of my opponent's brief, it says that there was an investigation. The fact that Officer Albany... Are the statements that you say Officer Smith made in the record? I'm sorry, ma'am. I've got old ears. I couldn't hear you. You've said Officer Smith said a number of things that you've described to us this morning. Yes. I'm asking you if those statements by Officer Smith are in the record. Yes, ma'am. And I'm asking you to tell me where they are. Where can I find them? My appendix at... It begins at A696, and I think the ultimate statement that you're looking for is at A717. Thank you. Yes, ma'am. I'm sorry if I... Old ears, Judge. Okay. Now, why did it come to light then? Okay. I'll give you like another minute, but you're... I'm sorry, Judge. You'll have rebuttal, but if you want to just... I will take it up on rebuttal. Okay. Great. Thank you. Good morning, Your Honors. May it please the Court. I am Karen Felter from Smith-Sovic Law Firm on behalf of the police, Onondaga County, the Onondaga County Sheriff's Department, and Deputy Albanese and Sergeant McDonald. Could you start, just because my memory is short, with a response to the very last thing your opponent said about those statements being in the record? I believe that the deposition of police officer Ashley Smith is in the record. I think that I may have actually submitted that as well, because I tried to submit a complete record of everything that was before the court in terms of discovery. She was an officer from a different police agency who was present when there was an altercation with Deputy Albanese, several other officers, and first responders with a teenager who was suicidal. And so it was a crisis situation. The young man was very upset. He was very agitated, and he spit at the officers directly in their faces. And as a result of that, Deputy Albanese pushed him down with his hand on his neck for a couple of seconds and restrained him in that way. And the thing that Deputy Albanese was disciplined for was not any sense of excessive force or improper conduct in connection with how he managed the situation. What he was written up for was stating in his report that when he pushed the young man back down onto the gurney where they were trying to restrain him, that he did it with an open hand. And that was his recollection. But the body camera video of the incident, which the county turned over to the plaintiff's attorney, showed that, in fact, his hand was not quite open. It was more like, you know, sort of around the kid's neck. So that was an incorrect statement in his report, and he was disciplined for that. I'm not exactly sure what other disciplinary actions Attorney Perry is talking about in connection with Deputy Albanese. There's certainly no evidence whatsoever in the record that he has a long history of disciplinary problems. And the specific documents that showed that there was potentially a problem with his credibility because of the fact that he created a document that was in contrast with what the video showed was the evidence that the magistrate judge determined was relevant. Because this incident occurred five years after the plaintiff's arrest. So it was not relevant for any other purpose other than potentially credibility. And that evidence was turned over to the plaintiff's attorney. After the incident here, the officer was still on the force five years later. That is correct. He was still on the force, and as a result of this incident with the young man and his paper problem, he was put on a suspension or suspension of some sort. There was a charge that was pending, and he elected at that time to resign from the Sheriff's Department. And he therefore took a penalty of dock and pay and some suspension of days from work and resolved that charge. And he then resigned. And that's truly the end of it. And honestly, I just cannot understand how any of that is relevant to this case. This case is unusual in the fact that Mr. Perry made a determination at a very early stage in this matter that there was a conspiracy of some kind, a cover up, an effort by all the defendants and defense counsel to destroy and hide evidence, commit crimes, all sorts of nefarious acts. And he essentially stopped prosecuting the case at that point. He conducted no meaningful discovery whatsoever other than initial document demands and interrogatories. He did not conduct a deposition of any of the named parties or their representatives. He never even tried to ask any of these people about the basis for probable cause or the basis for the fact that, you know, this officer arrested this woman because he had probable cause. He had identified her as a person who had passed counterfeit bills. And she acknowledged that. She had been at the store and that she was the person that he was looking for when he arrived at her home. And that was after he had examined But she testified that she tried to give him evidence that she had gotten these bills out of an ATM machine. That's correct. She did say that in her deposition, which of course was contrary to what Deputy Albany said in his sworn affidavit, that she had taken the money out of an ATM. And she testified that he refused to look at her receipts, her ATM receipts? Well, she said, I don't think that she testified that she had, I don't think that the testimony was specifically that she had a receipt for the ATM. I think she said that she had her receipt from Wegmans. But in any event, even if that is what occurred, and I'm not sure that it is, the case law is very, very clear that a deputy, an officer in Deputy Albany's situation is not required to examine every avenue by which the suspect could be proven innocent of the crime. If an officer has probable cause to arrest somebody for passing counterfeit bills, which he did by the investigation he did at the store, confirming the identity of the suspect and the fact that the bills were counterfeit, he was not required to complete an investigation to the point of proving beyond a reasonable doubt that she intended to commit the crime. So I think that the evidence that, in the record, showing that there was probable cause at the time that he was invited into the home and immediately was able to determine her identity and confirm that she was the person he was looking for from the investigation he did at the store, the probable cause was satisfied. And even if the plaintiff asked him to leave at that point, he was not there conducting any sort of search. He wasn't, he didn't remain on the premises conducting an improper search. Had he arrested her before she asked him to leave? He, she says that she, once that she figured out why he was there, which was he asked her some questions about Wegmans and the fact that he was conducting the investigation, those are the questions that satisfied his probable cause. Had he arrested her before she asked him to leave? Well, I don't know whether he arrested her. I mean, I don't know what her timeline is. I'm not sure that that's clear from her deposition. But what I do know is that whether or not she asked him to leave, he had probable cause at the point that she asked him, assuming that she did. And so therefore, his subsequent act of arresting her was proper because he had established, first of all, entry into the home on a voluntary basis. And then immediately thereafter, upon asking her a couple of questions, he satisfied his probable cause burden. So the subsequent arrest, even if it occurred after she asked him to leave, and again, I'm assuming that that's what happened for the purpose of a motion for summary judgment, he had probable cause at that point to arrest her. So his actions were proper, notwithstanding the fact that she may not be convicted of the crime because there was a defense. I mean, I would imagine that every perp that is approached by a police officer expresses, to some extent, their innocence of the crime. But that does not preclude the officer from making an arrest if they have probable cause. If the court doesn't have any further questions, I will... I would take it that in very, very broad strokes, your position is that in these sorts of confrontations, bad things happen, wrong things happen, but they are not necessarily either torts or violations of the Constitution. Well, I mean, certainly I think that that is possible. It's certainly... Well, is that what happened to you? It's something that happens still within the context of both absolute probable cause, which is sufficient under the law to support an arrest, also under the doctrine of qualified immunity, that under the circumstances, it certainly appears that it's probable. And therefore there was no violation of the Constitution? That's correct. Our position is there was no violation to begin with. And secondly, even assuming that there was, the probable cause that qualified immunity covers that. Unqualified immunity, that's an affirmative defense that the defendants have the burden to prove. Correct. And I think that we certainly did that with the submission of a lot of evidence from both of the named individual defendants concerning the specific actions that they took in connection with this woman's arrest and her un-arrest. Because once Officer Albanese heard from her that she had taken this money out of the ATM, he called his sergeant and asked her, explained to her what happened, and she told him to go check out the story, which is exactly what he did. But there's a dispute of fact as to when she told him that. Well, again, I don't know that it matters because... If he thought it was important to check after he had arrested her because that's when he got the information, why wouldn't he have thought it was significant to check it out before he arrested her if he had the information before that? Well, I mean, as I said, I think that many people who are in an officer's situation like Deputy Albanese will encounter a suspect who is making claims about various factors that they believe equate to innocence of the charge. This is not sort of an overall look at human behavior and crimes. This is a specific crime of passing two bills that turned out to be counterfeit that she says, I just got these out of the ATM machine. Correct. From her testimony, it seems that he just wasn't interested in looking at the evidence that she had. Well, again, as I said, I think that he was able to determine under the case law, it says if you're able to identify somebody as a suspect in a case of counterfeit bills where you've identified the person as having passed them, then that satisfies the probable cause requirement without establishing the actual criminal mens rea of the defendant. If she made the statements to him about having taken the money out of the ATM before she was arrested, he was not under any obligation at that point to conduct a complete investigation to determine whether she could be convicted of the crime beyond a reasonable doubt. However, either way, he did follow up and talk to his sergeant and determine what a proper course of action would be given that she had made this statement. And she told him to go check out the story, which he did. And she was then unarrested without charges. And rather than prosecute the actual elements of the various charges that are in the amended complaint, the attorney for the plaintiff just demanded that the court force the county to turn over the arrest report and other types of items, fingerprints and things that were all destroyed at the request of the plaintiff in the wake of her unarrest. So those documents, that evidence, could not be produced. And he continually argued throughout the case that there should be a charge of spoliation as a result of the county not producing that evidence. And the court continually advised him that a motion for spoliation would have to be made at the end of the case. And at the end of the case, after the defendants put forth a significant amount of information and evidence in support of a motion for summary judgment, he failed to respond to it. He failed to make a motion for summary judgment. He failed to oppose the motion for summary judgment under Rule 56D stating that there was evidence that he could not obtain that prevented him from creating a question of fact. So the summary judgment that's on appeal was never actually opposed, is that what you're saying? It was not. And what he did was he filed a motion to compel production of the same evidence that he'd been asking for throughout the case on the basis that he needed it to prepare a motion for spoliation, which frankly doesn't make any sense. I mean, if you're asking the court to order production of evidence and it was turned over, there would be no need for a spoliation motion. The fact of the matter is that the evidence did not exist any longer and there was all sorts of explanations for that in the record, reasonable explanations in terms of the process that occurred, her unarrest, the fact that the plaintiff had requested that these evidence be repealed so that it would not be hit on any sort of electronic criminal records file. And, you know, the evidence just was not there. Okay. Ms. Schultz, I think we have your position. Thank you. Your Honor. I don't even know where to begin. I promised Kerry leaving the house this morning that I would be polite. I am going to be very, very polite, but this is outrageous. Because? Because? If we are to believe the defendants, they went into someone's house, arrested her for passing 220s that she did not know were counterfeit. The woman was dragged into jail. She was kept for six hours. She was cavity searched. She was strip searched. She was required to sign the unarrest form. Has everybody seen that? That's the most unconstitutional document I have ever seen. It says nothing else except don't sue us. That's it. It's not a processing form. It's don't sue us. Now, if we believe Officer Albanese... Does that document enter into our consideration here other than the fact that it's overreaching? But we can just throw it out. Judge, it is absolutely something for you to be considered because the cover-up is part of the action. Right, but if it's not, they're not trying to argue waiver based on that form. They're not using that form as a defense in this case. And so regardless of whether or not it seems bad practice, I don't see how that's relevant to this claim, the fact that they have this unarrest form that, as I said, may or may not be proper, but they're not trying to use that as a defense here. Judge, it's important because according to Officer Albanese, Ms. Glover was released and she voluntarily signed away her rights to a civil suit. That's Officer Albanese's story. Ms. Glover's story is they wouldn't let me out until I signed it. That's different. That's coercion. It's worse than coercion. It's outrageous. Is it true that you did not, as counsel, that you did not oppose... That you did not oppose the motion for summary judgment that you... No, Judge. Under Rule 56, please avail yourself of the statute. I am entitled to make a motion for additional discovery if I think it's necessary to answer the... And I sent in detailed papers saying I want to make a spoliation motion. Before I do, I want to do some discovery. And the reason I did was because Judge Baxter would not allow me to do a motion to compel earlier. He refused me on various occasions over and over and over again and told me I could do it then. I was doing exactly what Judge Baxter told me to do. There's no question about that. And when I actually made the motion, the judge had a couple of options. If he was going to deny me, he could simply say, okay, I'm not going to let you do the additional discovery. You've got to go with what you've got. Answer the motion. He didn't do that. Judge, I'm sorry if I'm getting worked up here, but this lady went through hell and she has nothing. She can't afford an attorney. I'm here for free. And I'm fighting City Hall here because somebody thinks that what happened is okay. It's not okay. Nobody... I don't think the notion is that it's okay. The notion is that it was not a violation of her constitutional rights. That doesn't mean it's okay. Judge, I understand. Okay. But the fact of the matter is everyone in this courtroom, if we were to take everybody's wallet in this courtroom, there's a couple of counterfeit 20s right here, I bet you. And what, are we all committed to crime? That's not probable cause. I happen to look down. The Supreme Court in Ibarra said the factors relied upon must not be ambiguous and innocent explanation is, is that there's a lot of 20s out there and we all get one sooner or later. I've done it myself. All right. I think we understand your position, Mr. Perry. Thank you both. We will take this case under advisement.